Stewart, J.
 

 Section 8623-72, General Code, provides in part as follows:
 

 “Unless the articles otherwise provide, any dissenting shareholder, who shall not have voted in favor of the proposals herein mentioned and by the provision of any section, of this act, is entitled to relief * * * when all or substantially all of the property and assets of the corporation have been authorized to be sold, leased, exchanged, or otherwise disposed of * * *, shall be paid the fair cash value of his shares as of the day before the vote was taken authorizing any such action.
 
 *315
 
 * * *, if such shareholder within twenty days after the day on which the vote was taken, shall object in writing to the action so taken and shall demand in writing the payment of such fair cash value of his shares. * * *
 

 “The right of a dissenting shareholder to be paid the fair cash value of his shares shall cease if and when the corporation for any reason shall abandon its purpose or the shareholders shall revoke the authority to sell, lease, exchange, or otherwise dispose of its assets * * *.
 

 “No demand for payment of such fair cash value may be withdrawn by the shareholder making the same unless the corporation, by its board of directors, shall consent to such withdrawal (or unless the right of such • dissenting shareholder to be' paid the fair cash value of his shares has ceased).
 

 “Within ten days,after the receipt of any such demand the corporation shall inform such shareholder in writing whether it will pay the demanded amount, and, if it refuses to pay such amount, it shall offer in Writing to pay an amount as and for such fair cash value.
 

 “If the corporation shall not agree to pay the amount demanded, or the dissenting shareholders shall not agree to accept the amount offered by the corporation, the corporation or the dissenting shareholder, if he has complied with all the conditions of this section, may, within six months after the day on which the vote was taken but not thereafter, petition the Court of Common Pleas of the county in which such corporation or the consolidated corporation has its principal office to determine the fair cash value of the shares mentioned in such demand as of the day before the vote was taken to which objection was made-as aforesaid. * * *
 

 “A shareholder who so objects in writing ánd de
 
 *316
 
 mands in writing payment of the fair cash value of any shares shall not be entitled to vote such shares or to exercise any rights respecting such shares or to receive any dividends or distributions thereon, unless and until the sale * * * shall, for any reason, be abandoned, or, with the consent of the corporation, the objection and demand shall be withdrawn * * *.
 

 “Any shareholder who does not object and demand in writing the payment of the fair cash value of his shares, in the manner and at the time hereinbefore provided, shall be concluded by the vote of assenting shareholders.
 

 “A corporation may rescind any vote authorizing the sale, lease, exchange or other disposition of its assets, * * * abandon its purpose, and revoke authority conferred by any vote at any time before the action so authorized has been completed, by the • same v.ote as was required to authorize such action.”
 

 That section is a part of the General Corporation Act (Sections 8623-1 to 8623-137, inclusive, General Code).
 

 Another part of the General Corporation Act is Section 8623-53, General Code, which provides in part as follows:
 

 “Any shareholder of record who is entitled to attend a shareholders’ meeting, or to vote thereat or to assent or give consents in writing, is entitled to be represented at such meeting oh to vote thereat or to assent or give consents in writing, as the case may be, or to exercise any other of his rights, by proxy or proxies appointed by a writing signed by such shareholder. ’ ’
 

 It will be observed that for the shareholder to be entitled to an appraisal of his stock and the payment to him of its fair cash value upon the sale by a corporation of its assets, he must have complied with
 
 *317
 
 two conditions: (1) He must not have voted in'favor of the proposal to sell and (2) he must have objected in writing to the action so taken and have demanded in writing the payment of the fair cash value of his shares.
 

 It is undisputed that in these cases each plaintiff fulfilled the first condition; neither of them voted in favor of the sale authorized to be made at the shareholders’ meeting of April 10, 1946. The question, therefore, with which we are concerned is whether plaintiffs fulfilled the second requirement which the statute placed upon them.
 

 There is no doubt that Taft and his partners, purporting to represent plaintiffs, did object' in writing to the action taken and did demand on behalf of the plaintiffs the payment of the fair cash value of plaintiffs’ shares, but it is agreed that Taft and his partners themselves were strangers to .the corporation and that they did not in any way, outside of the letters and notices in which they claimed to represent plaintiffs, exhibit or demonstrate to defendant any proof of authority to act in plaintiffs ’ behalf.
 

 At common law it is within the power of a single shareholder to prevent a sale of the assets of a corporation or to prevent a merger of one corporation with another. When changing economic conditions demonstrated that this power of a single shareholder was harmful to the rights of the majority shareholders, statutes were enacted in most of the states which took away from the individual shareholder the power to defeat a sale or merger and in compensation to him offered him the money value of his shares if he chose .to sever his connection with the corporation. In many of the states sales of assets are permitted, in others mergers are permitted and in some both are permitted. In Ohio both are permitted as is recognized
 
 *318
 
 by Section 8623-72, General Code. The statute is, . therefore, in derogation of the common law and the usual rule in the case of such an enactment is to construe it strictly. It is claimed by plaintiffs, however, that the enactment should be liberally construed because it is merely a statutory expression of the right in equity of a minority shareholder.
 

 It is only fair to say that in these cases there are no claims of fraud, overreaching or inequitable conduct upon the part of defendant. The construction we should place upon the statute should be the one which its language requires to carry out its intent and objective.
 

 In construing a similar statute in Pennsylvania the Supreme Court of that state held:
 

 “Where a remedy or method of procedure is provided by an act, its provisions shall be strictly pursued and exclusively applied.”
 
 Era Co., Ltd.,
 
 v.
 
 Pittsburgh Consolidation Coal Co.,
 
 355 Pa., 219, 49 A. (2d), 342.
 

 The Supreme Court of Delaware in construing a statute as to the appraisal of stock for the purposes of money payment to dissatisfied shareholders said:
 

 “There are general expressions to be found in some •of the decisions to the effect that merger statutes are to be construed liberally in favor of the objecting stockholder for the reason that such statutes are enacted for the benefit of minority stockholders. *
 
 * *
 
 And, .moreover, it may be doubted that such expressions are wholly accurate. At common law it was within the power of a single stockholder to prevent a merger. It was when the idea became generally accepted that in the interest of changing economic conditions mergers should be permitted despite the opposition of minorities that statutes were enacted in many states, as in this state, which took away from
 
 *319
 
 the individual stockholder, the power to defeat the consolidation, and in return offered him compensation in money if he elected to sever his connection with the corporation. * * * Merger statutes are enacted, not in aid of dissenting shareholders alone, but are as well in aid of majority stockholders, and also in aid of the public welfare if the notion is not entirely out-moded that healthy business corporations are in some degree conducive to the general good.”
 
 Salt Dome Oil Corp.
 
 v.
 
 Schenck,
 
 —Del., —, 41 A. (2d), 583.
 

 At common law the relationship between the shareholder and the corporation is personal. The right to vote at meetings cannot be delegated, but in Ohio the General Assembly has provided as a part of the General Corporation Act that a shareholder is entitled to be represented at a meeting of the corporation, to vote thereat, to,assent or give consents in writing, as the ease may be, or
 
 to exercise any other of his rights, by proxy or proxies appointed by a ivriting signed by such shareholder.
 
 (Section 8623-53, General Code.)
 

 It should be observed that Section .8623-72, General Code, makes no provision for the dissenting shareholder to exercise by agent or by proxy the right to object in writing to the sale of the assets of the corporation and to demand in writing the payment of the fair cash value of his shares, and it may be argued that since no such right is given it was intended that he must act personally. Against that argument is the provision above quoted from Section 8623-53, General Code, that he may appoint a proxy “to exercise any other of his rights.” -As has been pointed out, both Sections 8623-53 and 8623-72, General Code, are part of the General Corporation Act. It is not an illiberal construction to say that the dissenting shareholder is given a right by virtue of the provision quoted from Section 8623-53, General Code, to act under Section
 
 *320
 
 8623-72, General Code, by an agent.
 

 The sale of the assets of a corporation and the dissent by a shareholder bring about important and complete changes in the relation between the company and the dissenter. Under the statute, when the shareholder has dissented, he cannot withdraw his demand for payment for his stock unless the board of directors of the corporation consents thereto, or unless it abandons the sale. After his dissent the shareholder ceases to have the right to vote his shares, to exercise any rights respecting them t»r to receive any dividends thereon. He loses his rights as a shareholder and in lieu thereof becomes a creditor of the corporation. The corporation has the right to rescind any vote authorizing the sale at any time before it has been completed.
 

 Obviously, it is essential that the corporation know the dissent of the shareholder is genuine and in such form that it cannot be disavowed. This is impossible if such dissent may be accomplished by' the statement of an alleged agent with no evidence of his authorization by the shareholder, which dissent may be subject to repudiation by the shareholder and thus change the entire' situation. The rescinding of a sale might well be made if a formidable number of the shareholders dissented, or dividends might be declared which would be so attractive as to cause shareholders dissenting through an agent not expressly authorized, to repudiate the agency and thus change their status with the corporation. These are some of the examples of what might occur to the detriment of the corporation and the majority of its shareholders unless dissents were made in such a manner as to make their genuineness beyond any possibility of question or denial.
 

 The Delaware courts have passed upon the precise question we have before us. In
 
 In re Universal Pic-
 
 
 *321
 

 hires Co., Inc.,
 
 —Del. Ch., —, 37 A. (2d), 615, the court construed that state’s corporation-merger statute. Under the Delaware statute any shareholder who objects in writing to the merger or consolidation may demand from the resulting or surviving corporation, and is entitled to receive from it, by following a certain procedure, the value of his stock at the date of the merger. After objecting in writing to the proposed merger, the shareholder is required to demand in writing from the resulting corporation, within 20 days after the merger has been accomplished, payment for his stock. With reference to those who had filed objections and demands through alleged agents and not in person or by proxies authorized in writing by the principals, the court said:.
 

 “It is argued that the persons who signed the objections and demands were not authorized to do so. Without discussing this, I shall proceed to the contention that the objections and demands were defective, in that no evidence of the purported agents’ authority was furnished the corporation when these documents were presented to it. The corporation urges that ‘it was vital for the corporation to know whether, at the time when the objections were filed, the objections were by
 
 bona fide
 
 stockholders or were the acts of interlopers who, for collateral reasons, desired to be obstructive.’ As has already been indicated, objections and demands are calculated to induce important action by other stockholders (approval or disapproval of a merger) and by the corporation (action relating to the disenfranchisement and dividend disqualification). It is well settled that the existence of an agency is not presumed; that, in general, an ‘agent cannot establish his own authority, either by his representations or by assuming to exercise it;’ and that ‘ every authority must find its ultimate source
 
 *322
 
 in some act or omission of the.principal.’ * * * [Citation of authorities.] In several instarices, the only-evidence of the existence of an agency before the stockholders, or the corporation, when the objections and demands were filed, was the representation of the purported agent (a stranger to the corporation in so far as the shares in question were concerned), and his assumption to exercise it. Under such circumstances, it would seem manifestly unreasonable to require consenting stockholders, or the corporation, to assume the existence of an agency and take action upon that assumption.”
 

 That case was followed by the same court in the case of
 
 Friedman
 
 v.
 
 Booth Fisheries Corp.,
 
 —Del. Ch., —, 39 A. (2d), 761, where the court said:
 

 “As to all of the disputed claims, questions are raised whether the claimants complied with the statutory requirement of making a written objection to the merger. The corporation received letters purporting to be written on behalf of certain shareholders, but signed by one-Edgar J. Bernheimer. The letters state objections to the merger. The only evidence of any authority in Bernheimer to make the objections on behalf of the shareholders was his own representation and assumption to act. Under such circumstances, objections by an agent are insufficient.'
 
 In re Universal Pictures Co.,
 
 Del. Ch., 37 A. (2d), 615. Claimants contend, however, that Bernheimer was an attorney at law, and that ‘an attorney need not prove his agency at the time of his representation but strangers (respondent here)
 
 have the ripht to demand satisfactory evidence of his
 
 authority.’ It may be that presumptions of authority are indulged in where an attorney enters an appearance in a proceeding in a court before which he is admitted to practice; but where, as here, the asserted agency is not one which can be performed only by an attorney at law, the authority of a lawyer
 
 *323
 
 is no more presumed than that of a layman. * * * [Citing cases.] The rule of the
 
 Universal Pictures case
 
 is applicable and the claims should be dismissed.”
 

 It seems to us that those cases are applicable to these before us and that the reasoning in the former is persuasive and correct.
 

 The argument is made in brief of plaintiffs that Klein was present in person at the shareholders’' meeting of April 10, 1946; that defendant is not a large corporation with a floating supply of stock in brokers’ names, as was the situation in the
 
 Universal Pictures
 
 case, but on the contrary defendant is a small, closely held corporation to which plaintiffs were well known; that there was no possible doubt in the minds of consenting shareholders at the meeting that plaintiffs were objecting to the sale; that it was clearly understood why they were objecting; and that the consenting shareholders had all the necessary information upon which to take action and were required to assume nothing.
 

 The above statements would be very persuasive if the decision in these cases were to determine only the rights of the parties herein and did not require the interpretation of the statutes which apply to all corporations organized under the laws of Ohio. The General Assembly saw fit to enact Section 8623-72, General Code, to apply to all corporations and, therefore, these cases must be decided in the same way as though they concerned a large corporation with floating supplies of stock in various names, to which corporation the shareholders were not personally known and, likewise, their purported agents were not known to be honorable, upstanding persons. It is the law which must be declared in these cases and not the standing of the parties or attorneys.
 

 We hold that Section 8623-72, General Code, requires the dissent and demand to be made in writing
 
 *324
 
 and in person by the shareholder or by a proxy appointed by a writing signed by the shareholder and exhibited to the corporation, as authorized by Section 8623-53, General Code. It necessarily follows that such written' authority must be displayed to or filed with the corporation within the time limited. By the failure of the plaintiffs to properly comply with the requirement to demand in writing the payment of the fair cash value of their, shares within 20 days from the date on which the sale of the assets of the corporation was authorized by the shareholders, plaintiffs lost their right to proceed to have determined the fair cash value of their shares in accordance with Section 8623-72, General Code, and are relegated to their position as shareholders in defendant corporation.
 

 The judgments of the Court of Appeals are affirmed.
 

 Judgments affirmed.
 

 ■
 
 Weygándt, C. J., Turner, Matthias, Hart, Zimmerman and Sohngen, JJ., concur.