PRICE, TRUSTEE, ET AL., APPELLANTS, *v.* MARATHON OIL COMPANY, N.K.A. MARATHON PETROLEUM CO., APPELLEE.

(No. 5-83-13—Decided
September 6, 1983.)

*Messrs. Topper, Alloway, Goodman, DeLeone & Duffey* and *Mr. John J. Duffey,* for appellants.

*Messrs. Rakestraw & Rakestraw, Mr. Russell E. Rakestraw, Messrs. Jones, Day, Reavis & Pogue, Mr. John L. Strauch* and *Mr. Robert R. Weller,* for appellee.

GUERNSEY, J. This appeal is from summary judgment of the Court of Common Pleas of Hancock County in a special proceeding brought by Lillian Werk Price, as trustee, and Thomas E. Price and Edwin C. Price, Jr., as successor co-trustees, against the defendant Marathon Oil Company, now Marathon Petroleum Co.

The controversy originated from the approval by the requisite number of shareholders of Marathon of its merger with a wholly owned subsidiary of the United States Steel Corporation, known as U.S.S. Merger Sub, Inc. The special proceeding is that provided by R.C. 1701.85 for determining the fair cash value of shares belonging to shareholders dissenting from the merger vote. The 7,544 Marathon shares here involved are part of the corpus of a trust declared on August 17, 1973, by Lillian Werk Price in favor of herself and other beneficiaries with herself as original trustee. The shares were issued in, and at all times since on or about the declaration of the trust, have been recorded on the books of Marathon in the name of "Lillian Werk

Price TTEE U/A dated 7/3/73 by Lillian Werk Price Grantor for Lillian Werk Price et al."

It is disputed whether and when Marathon, at or prior to the time of the events in question, had in its possession a copy of the trust instrument. In any event, on March 12, 1982, a timely demand was mailed to Marathon by Thomas E. Price and Edwin C. Price, Jr., describing themselves as "successor Trustees of the Lillian Werk Price Trust," for the payment to the trust of the fair cash value of the shares which it holds, and claiming a fair cash value of $220.00 per share. On April 1, 1982, Marathon addressed its letter to the name in which the shares were recorded and advised that it had made a preliminary determination that the communication received on March 15, 1982 relating to obtaining fair cash value for 7,544 shares did not comply with R.C. 1701.85 because the shares had been voted for the merger. This alleged vote for the merger was determined to be erroneous and on April 27, 1982, Marathon requested the same addressee, the record holder, to deliver the share certificates for legending "that fair cash value has been demanded." After the legend was affixed the shares were then sent to "Edwin C. Price, Jr."

On the basis of these facts, and on the allegation that the "Price Trust and Marathon Defendant herein, have not come to an agreement on the fair cash value of the shares," the plaintiffs filed their complaint demanding judgment for fair cash value "as determined under Section 1701.85 of the Ohio Revised Code."

After various discovery procedures, Marathon, on December 15, 1982, and the "Plaintiff, Price Trust," on December 27, 1982, filed their respective motion and cross-motion for summary judgment as to the eligibility of said shares for the payment of fair cash value under R.C. 1701.85. These motions were respectively supported by affidavits and exhibits, including a verified copy of the complaint, which established the existence, at least

as of the time of their filing, of additional pertinent facts.

The affidavit of Frank H. Jones, Assistant Secretary of Marathon, established without specific dispute that:

"6. Thomas E. Price and Edwin C. Price, Jr. did not furnish to Marathon on or before March 22, 1982 any document signed by Mrs. Price in which she authorized them to make a demand for fair cash value on. her behalf. They also did not deliver to Marathon on or before that date a copy of the trust agreement or any evidence to support their assertion that they had succeeded Mrs. Price as trustees."

The affidavit of Thomas E. Price, confirmed by the affidavit of Edwin C. Price, Jr., establishes without dispute that the trust declaration provides:

"XI. Upon the death, resignation or inability to act of Lillian Werk Price, Trustee hereunder, Edwin C. Price, Thomas E. Price, Edwin C. Price, Jr. shall be the successor Trustees upon their acceptance of the terms of this trust, with the same duties and powers as are imposed and conferred by this agreement upon the Trustee. In the event of the death, resignation or inability to act of Edwin C. Price, Grantor's husband, Thomas E. Price and Edwin C. Price, Jr. shall be the Trustees hereunder with the same powers and duties as are imposed and conferred by this agreement upon the Trustee. * * *"

The affidavit further establishes without dispute that they are successor trustees under the trust instrument; that their mother, Lillian W. Price, suffered a severe stroke on July 10, 1975, becoming paralyzed on her right and lower left side, unable to communicate, has been completely bedridden at home with three daily shifts of nurses, is ninety-one and unable to handle her affairs; that their father Edwin C. Price died April 20, 1975; that they have acted as successor co-trustees on and since July 10, 1975; and that, following a check of its records, Marathon mailed a letter to Edwin C. Price, Jr., acknowledging that its letter of "April 1, 1982, rejecting your demand, was incorrect in indicating that the shares had been voted for the merger."

The separate affidavit of Edwin C. Price, Jr., asserts, without dispute, that on July 3, 1973, as his mother's attorney, he was requested by the brokerage firm transferring securities to the trust to furnish it a copy of the trust instrument, which he did, and that "it is normal procedure for a transfer agent to require and file a copy of a trust before transfer is made."

On this state of the record the trial court sustained Marathon's motion for summary judgment and overruled plaintiffs' cross-motion for summary judgment, dismissing plaintiffs' complaint and holding that "plaintiffs are not entitled to receive fair cash value" because they failed to meet the requirements of R.C. 1701.85 by failing to show any authority to act as successor co-trustees. It is from this judgment that appeal was taken by the plaintiffs, assigning error as follows:

"1. The court of common pleas erred in granting summary judgment in favor of defendant, and against plaintiff and determining that successor trustees were required, in making a demand for payment of fair cash value of shares required by Section 1701.85(A)(2) Revised Code, to demonstrate to the corporation by affirmative act their status as successor trustees, without request by the corporation, where the shares upon which demand was made were held in trust, and had been registered with the corporation as held in trust, and the powers of the person named as trustee in the registration had terminated, and where the fact of successor trusteeship at the time demand was made is not disputed.

"A. There is no requirement under Section 1701.85 Revised Code for a successor trustee to affirmatively act to demonstrate his status as a successor trustee to a corporation with respect to a

demand for fair cash value, at least in the absence of any demand by the corporation for such proof.

"B. Under the facts of record, the fact of the existence of an express trust, and the terms of that trust, and the identity of the successor trustees must all be assumed for the purposes of summary judgment proceedings to have been communicated to the corporation prior to and at the time of demand for payment under Section 1701.85 Revised Code; and such affirmative communications sufficiently comply with the requirements of Section 1701.85(A)(2) Revised Code for an effective demand for payment.

"2. The common pleas court erred in granting summary judgment where there was a material disputed fact as to whether the corporation upon which demand was made under Section 1701.85 Revised Code for fair cash value of shares can be held to have knowledge of provisions in an inter vivos trust for a successor trustee when it is undisputed that the demand was made by successor trustees, who so identified themselves.

"3. The common pleas court erred in failing to grant partial summary judgment in favor of the plaintiff determining that the Price Trust had adequately made a demand for payment within Section 1701.85(A)(2) Revised Code, and is entitled to a determination, and payment, of the fair cash value of the shares."

As these assignments involve common dispositive considerations we will consider same together.

Although, in our opinion, on the basis of our determinations hereinafter, it matters not whether Marathon was in possession of a copy of the trust instrument at the time the demand for fair market value was presented, we will, since Civ. R. 56(C) requires that in the situation here existing, the evidence be construed most strongly in favor of the plaintiffs, consider that a copy of the trust instrument was then in Marathon's possession.

Among other things, not necessarily here pertinent, R.C. 1701.85 prescribes:

"(A)(1)  A shareholder of a domestic corporation is entitled to relief as a dissenting shareholder in respect of the proposals in sections * * * 1701.84 of the Revised Code, *only in compliance with this section.*

"(2)  In the case where the proposal must be submitted to the shareholders of the corporation involved, *the dissenting shareholder must be a record holder of the shares of the corporation* as to which he seeks relief as of the date fixed for the determination of shareholders entitled to notice of a meeting of the shareholders at which the proposal is to be submitted, and such shares must not have been voted in favor of the proposal. Not later than ten days after the date on which the vote on such proposal was taken at the meeting of the shareholders, the shareholder must deliver to the corporation a written demand for payment to him of the fair cash value of the shares as to which he seeks relief, stating his address, the number and class of such shares, and the amount claimed by him as the fair cash value thereof.

"* * *

"(D)  The right and obligation of a dissenting shareholder to receive such fair cash value and to sell such shares as to which he seeks relief, and *the right and obligation of the corporation to purchase such shares and to pay the fair cash value thereof terminates if:*

"(1)  *Such shareholder has not complied with this section,* unless the corporation by its directors waives such failure;

"* * *" (Emphasis added.)

Although some of the same rationale might be involved, we, as likewise concluded the common pleas court, do not consider the case of *Klein* v. *United Theaters Co.* (1947), 148 Ohio St. 306 [35 O.O. 298], controlling. The *Klein* case involved G.C. 8623-72, a somewhat different predecessor statute, and substantially different facts, including facts raising an

issue of agency, but not any issue as to trusts and trustees. The demand in the *Klein* case was not made by the holder of record or anyone claiming rights of ownership as is the case here.

Concededly, the shares here involved constitute part of the corpus of the trust created by Lillian Werk Price but title to trust property is, of course, in the trustee, or trustees, and is not held in the fictitious name of the trust. Consistently, when the trust was created the shares were issued and recorded on the corporate records in the name of "Lillian Werk Price, Trustee," etc. The prevailing theory is that when a vacancy occurs in a trusteeship and an appointment is made, title is transferred, not by the authority of the court, but by operation of the trust instrument. 3 Bogert, Trusts and Trustees 1698, Section 532; and 1 Restatement of Trusts 2d 240, Section 109. Similarly, it is held that where the trust instrument itself provides expressly or impliedly that new trustees shall have the same powers, rights, and interests in the trust property as their predecessors, title vests in successor trustees by virtue of the original trust instrument without necessity for a formal conveyance. 90 Corpus Juris Secundum 208, Trusts, Section 237, note 86. Although at the time the successor trustees here gave notice of their intention to dissent as to the merger, it is apparent that Marathon did not admit to their right to do so, although recognizing them as agents for the record holder, and it is equally apparent from its failure during the summary judgment proceedings to join issue by affidavit or other permissible means as to their standing, that at such time it was conceded that they were qualified as successor trustees.

The broad issue which then appears is whether persons who have, in fact, become fully qualified as successor trustees under the provisions of a trust instrument, entitled by same to the possession of and title to corporate shares, constituting a part of the corpus of the trust,

may assert under the provisions of R.C. 1701.85 a demand as dissenting shareholders for the fair cash value of such corporate shares, notwithstanding that the shares involved still stand of record in the name of the original trustee, who is still living, but, under the provisions of the trust agreement, no longer qualified to administer the trust, and the corporation is not advised concurrently with the demand as to the manner in which the succession to the trust occurred, although then advised that the demand was being made by successor trustees? This issue, however, is further narrowed by the particular circumstances and consideration of other statutes.

The critical language of R.C. 1701.85(A)(2) involved is that the "* * * dissenting shareholder must be a record holder of the shares of the corporation as to which he seeks relief as of the date fixed for the determination of shareholders entitled to notice of a meeting of the shareholders at which the proposal is to be submitted, and such shares must not have been voted in favor of the proposal. * * *" In that Marathon knew from its records which shares were voted in favor of and which shares were voted against the proposal, the *maximum* extent of the dissent was immediately apparent, being, of course, all of those who did not vote in favor of the proposal. The term "record holder" had primary significance in determining voting ownership as of the date fixed for the determination of shareholders entitled to notice of the meeting, and only secondary significance as to the general rights of ownership.

The term "record holder" and the associated obligation of the corporation in circumstances as here presented were necessarily qualified by pertinent provisions of R.C. 1701.28(B):

"(B) A corporation shall incur no liability if:

"* * *

"(2) It treats any person in whose name shares of other securities stand of

record on its books as the absolute owner thereof, with full competency, capacity, and authority to exercise all rights of ownership thereof irrespective of any knowledge or notice to the contrary, or any description, limitation, or qualification, or reference to any other instrument, or to the rights of any other person, appearing upon its records or upon the certificate for shares or such other securities;

"* * *

"(4) When any other fiduciary [other than set forth in subdivision (3) ] has furnished to the corporation proof, satisfactory to it, of his authority to exercise any rights with respect to shares or such other securities of the corporation which do not stand of record in his name, it treats such fiduciary as entitled to exercise such rights; * * *."

Thus, qualified by these provisions, Marathon had the option when the demand was made, without incurring any liability, to either treat Lillian Werk Price, Trustee, the holder of record, as the absolute owner to the exclusion of the successor trustees, or, if the successor trustees had furnished to Marathon *proof, satisfactory to it, of their authority to exercise* the rights of dissenting shareholders, to treat them as such to the exclusion of the original trustee.

Marathon carefully chose to address any communications required of it by statute to the record holder, first erroneously advising the record holder that the demand did not comply with the statute because the "[s]hares were voted for the merger." Twenty six days later it acknowledged the demand and advised the record holder to submit the share certificates for legending, which was accomplished, and the share certificates then sent to Edwin C. Price, Jr. Obviously Marathon considered that the demand had been made by the successor trustees acting as agents for the record holder and recognized ownership only in the record holder. We find no place in the record

before us where Marathon has ever refused, nor is it asserted that it has ever refused, to recognize the record holder's rights as a dissenting shareholder. On the contrary, it always did so until after a complaint was filed by the record holder and the successor trustees. Although the last sentence of subdivision (A)(5) of R.C. 1701.85 is to the effect that a request sent by the corporation to the dissenting shareholder that his certificates be submitted for legending "is not an admission by the corporation that the shareholder is entitled to relief under this section," neither does it preclude relief based as well upon the provisions of R.C. 1701.28, hereinbefore quoted, and other conduct.

In *Clarke* v. *Rockwood & Co.* (1959), 110 Ohio App. 38 [12 O.O.2d 215], appeal dismissed, 170 Ohio St. 7 [9 O.O.2d 307], motion to certify the record overruled October 7, 1959, decided twelve years after *Klein* v. *United Theaters Co., supra,* and involving the predecessor version of R.C. 1701.85 enacted by 126 Ohio Laws 432, 483, the Court of Appeals for Scioto County determined, in effect, that the corporation is estopped from insisting on slavish adherence to the statutory requirements for a demand for fair cash value when it has not rejected a demand made by an agent of certain of its dissenting shareholders until after the time within which the demand should have been made has expired. As stated by Judge Gillen in his opinion in the *Rockwood & Co.* case, at 44:

"* * * In the case at bar the corporation did not reject the demand made until after the time within which the demand should be made had expired. The corporation, after receiving Clarke's [the agent's] letter, made a counter offer and requested Clarke to have the shareholders he claimed to represent deliver their certificates of stock for the purpose of having a proper legend endorsed thereon. By complying with the company's request, the shareholders were, thereafter, deprived of any right to alter their situation.

Under such circumstances, we are of the opinion that the shareholders complied with the provisions of the statute and that they are entitled to have the fair cash value of their stock determined. * * *"

Here, as we have heretofore observed, there was never a rejection by Marathon of the demand made to it and the corporation consistently treated the record holder as having made the demand even beyond the time within which the demand was required to have been made. After legending the rights of a record holder, the transferees of shares so endorsed became limited and qualified by the provisions of R.C. 1701.85(A)(5), including the right to press the claim for fair cash value. Thus, it was consistent for Marathon in the summary judgment proceedings to concede, as of that time, that Thomas E. Price and Edwin C. Price, Jr., were successor trustees, and that Lillian Werk Price, Trustee, had become disqualified to continue as trustee. Such concession was no more than a concession that, although the demand had been treated as a demand made by Lillian Werk Price, Trustee, as record holder, by operation of the trust instrument her title as trustee had been effectively transferred to the successor trustees. As transferees "of the shares so endorsed," they acquired "* * * only such rights in the corporation as the original dissenting holder of such shares had immediately after the service of a demand for payment of the fair cash value thereof." R.C. 1701.85(A)(5).

Accordingly, we conclude that in the circumstances here existing Marathon was estopped from asserting that the demand was not made by the record holder of the shares of the corporation or that it was not made by the record holder in the manner required by R.C. 1701.85, that the successor trustees should be treated as present owners of the shares as if transferees of the shares endorsed by legend, and that, as such, they are entitled to be paid the fair cash value of such shares, as may hereinafter be determined.

Coming then to dispose of the specific assignments of error we find for the foregoing reasons that the first assignment of error is well-taken, constituting prejudicial error requiring reversal of the trial court's judgment, that the second assignment of error is not well-taken, for, in the circumstances, knowledge of the corporation at the time of the demand as to the trust provisions is immaterial, and that the third assignment of error is well-taken, constituting prejudicial error requiring reversal to the extent that it asserts a failure of the trial court to determine estoppel of the corporation to assert inadequate demand by the record holder, and to determine that the successor trustees are entitled to a determination, and payment, of the fair cash value of the shares.

For the prejudicial errors so found, the judgment of the trial court must be reversed and final judgment rendered consistent with this opinion.

*Judgment reversed.*

MILLER, P.J., and WHITESIDE, J., concur.

WHITESIDE, J., of the Tenth Appellate District, sitting by assignment in the Third Appellate District.