**LEFAGA S. BEAVER, Plaintiff**

**v.**

**WILLIAM H. CRAVEN, W, SCOTT BARRETT,**
**SOUTH PACIFIC TRADERS, INC., and DOES I-XX, Defendants**

High Court of American Samoa
Trial Division

CA No. 72-90

April 10, 1991

Before KRUSE, Chief Justice, MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala'ilima
For Defendants William H. Craven, W. Scott Barrett, and South Pacific Traders, John L. Ward II

On Motion for Summary Judgment:

In this case we must construe the terms of a trust instrument to determine how the settlors intended to distribute its assets when the first settlor died.

*Facts*

The following facts appear undisputed: In 1983 plaintiff Lefaga Beaver and her late husband William Beaver were the majority stockholders in South Pacific Traders, Inc., a corporation operating in

Nu'uuli. On December 19, 1983, they signed a trust instrument[1] creating an inter vivos trust ("Beaver Family Trust"), transferred all their shares[2] of South Pacific Traders, Inc. (hereinafter "S.P.T. stock") into the trust as the original corpus of the Trust Estate, Art. I.A, and appointed themselves as trustees. Art. II.A. Mr. Beaver added a codicil to his will on the same day giving, devising, and bequeathing to the trust any property not already transferred to it when he dies ("pour-over provision"). No other assets were transferred to the trust during their joint lifetimes. When Mr. Beaver died on September 18, 1984, certain events occurred under the terms of the trust: 1) the trust became irrevocable, Art. IV; 2) defendants Barrett and Cravens became trustees, Art. II.B; 3) the Trust Estate (including "all property received as a result of the Decedent's death") divided into two trusts administered separately- -a Survivor's Trust and a Decedent's Trust--and the assets of the inter vivos trust were distributed between them according to the terms of the trust agreement, Art. V. The allocation of assets to the Survivor's Trust vested in its trustees immediately; the Survivor's interest in her trust also vested immediately, Art. V., and she received a power of appointment over the principal and undistributed income of the Survivor's Trust. Art. VI.B.

On February 21, 1990, defendants Cravens and Barrett called a special shareholders' meeting of South Pacific Traders, Inc.. Claiming authority as sole trustees of the Decedent's Trust (which they maintained now held the S.P.T. stock per the allocation of assets required by the trust instrument), they removed the Board of Directors and elected a new board which included Mrs. Beaver and Muliufi Hanneman. Complaint and Answer, para. 16. The new board immediately met (without plaintiff and Hanneman) and elected Cravens to replace plaintiff as president and Abraham Orcini to replace Hanneman as secretary.

Since at least May 1990, plaintiff has not been allowed to function as an officer of the corporation or a trustee of either the Decedent's or Survivor's Trust. On or about July 2, 1990, defendants Cravens and Barrett received a letter from plaintiff in which she exercised her power of appointment under the Survivor's Trust to direct

---

[1] All terms of the trust are cited to the articles in the trust agreement.

[2] Apparently the shares owned by plaintiff and her husband were all issued and outstanding shares. Minutes of S.P.T. Shareholders' Meeting of February 21, 1990.

17

them as trustees to transfer title to all S.P.T. stock held in the Survivor's Trust into her name. As such transfer of S.P.T. stock would make her the major shareholder, she then requested that defendants (as named President and Chairman of South Pacific Traders) call a special shareholders meeting. Defendants responded with the claim that all of the S.P.T. stock comprising the original Trust Estate of the inter vivos trust had been allocated to the Decedent's Trust according to the terms of the trust instrument. Plaintiff then filed suit. Both parties have moved for summary judgment on the following issues:

*Discussion*

I.      *Which Trust Received the S.P.T. Stock Upon the Death of Mr. Beaver?*

The Decedent's Trust consists of all assets in the inter vivos Trust not allocated to the Survivor's Trust. Art. V.B. The Survivor's Trust consists of the separate property of the survivor plus Marital Deduction Property, defined as:

> Out of the *other* assets subject to the terms of this Trust, including those received by the Trustees upon, or by reason of the death of the Decedent, which are *eligible to satisfy the marital deduction*, property equal in value to the amount of the maximum "Marital Deduction" allowable in finally determining the Federal Estate Tax in the Estate of the Decedent less the value of all assets or interest which pass, or have passed to the survivor other than by the terms of this Trust, and which are eligible to satisfy said marital deduction.

> In making the selection and allocation of such assets, the *Trustees* shall do so in a manner to fully utilize the marital deduction . . . . *No assets shall be included in this distribution with respect to which a marital deduction is not allowed, or not allowable if included.* In the event a distribution or distributions are made for the Decedent's Probate Estate which shall *saturate and fully utilize* the Federal Estate Marital Deduction, then no additional distribution shall be made to the SURVIVOR's TRUST under the provisions of this subparagraph.

18

Art. V.A.(2) (emphasis added).   Since the instrument does not define "other assets" or "maximum Marital Deduction," the Court must construe these terms to ascertain and give effect to the settlors' intention in creating the trust.   In doing so we take into account the document's subject matter, scheme, and plan, as well as the relationship of the parties; favor effectiveness of the instrument and validity of the trust (if possible); favor beneficiaries rather than settlors; and give effect to the whole instrument by reconciling repugnancies and avoiding surplusage. 76 Am. Jur. 2d *Trusts* § 17 (1975); 90 C.J.S. *Trusts* §§ 161-173 (1955). The parties agree on material facts but differ on how they must be interpreted to determine the plan and intent of the settlors.   Interpreting a trust instrument to find the settlor's intention is a question of law. *Davison v. Duke Univ.*, 194 S.E.2d 761, 783 (N.C. 1973); *Evans v. First Nat'l Bank of Stillwater*, 192 P.2d 666, 667 (Okla. 1948).   Since there is no genuine issue as to any material fact, summary judgment can be rendered if either party is entitled to a judgment as a matter of law. Trial Court Rule of Civil Procedure 56(a).

Defendants argue as follows.   The Beavers executed the trust instrument intending to minimize federal estate taxes by maximizing the estate's marital deduction, to provide lifetime income for the survivor, and to ensure that the Trust Estate would pass to their children when the survivor died.   Defendant's Memorandum of Points and Authorities, at 2.   "Marital Deduction Property" is restricted to "*other* assets [than the S.P.T. stock] subject to the terms of this trust."   *Id.* at 3 (emphasis added).   A probate action (PR No. 29-87) was opened, and all of decedent's property "poured into" the inter vivos trust per his will. These "other assets" that poured over satisfied the maximum marital deduction, were transferred to the Survivor's Trust, and were distributed therefrom to Mrs. Beaver, exhausting and terminating the Survivor's Trust.   *Id.*   They argue that the settlors wished to transfer to the survivor only her half of all property acquired during the marriage.   Affidavit of W. Scott Barrett, at 5.

Plaintiff, on the other hand, contends as follows.   She and Mr. Beaver intended primarily to transfer as much of the trust estate of the decedent as possible to the survivor without paying federal estate tax. They intended the Survivor's Trust to receive all properties passing through either the inter vivos trust or the decedent's estate without being subject to federal estate tax.   Plaintiff's Memorandum of Points and Authorities, at 3.   None of decedent's property was subject to probate or distributed to the trust at his death, and no estate taxes applied to American Samoa property; hence, all property in the original trust (i.e.,

19

the S.P.T. stock) passed to the Survivor's Trust. Complaint, paras. 11, 13, 14. She does not interpret the phrase "other assets"; instead, she argues that the words "saturate" and "fully utilize" imply that if the assets transferred to the survivor other than through the trust do not exhaust the maximum marital deduction, then the trustees must distribute the assets in the inter vivos trust so that the survivor receives all of the trust escaping federal estate tax, i.e., the entire trust. Plaintiff's Memorandum of Points and Authorities, at 4. In order to assess these respective arguments, we need to look at what the trustors meant by "other assets" and "maximum marital deduction."

## A. Marital Deduction

The "marital deduction" is a deduction from a decedent's gross estate allowed in computing the estate's liability for federal estate tax. 26 U.S.C. § 2056. Those dying before 1976 could deduct up to 50% of their "adjusted gross estate"[3] that passes or passed to the surviving spouse. 26 U.S.C. § 2056(c)(1), *amended* by P.L. 94-455, § 2002(a) for estates of decedents dying after 1976. Those dying after 1976 could deduct the greater of $250,000 or 50% of the adjusted gross estate passed or passing to the spouse. 26 U.S.C. § 2056 (c)(1)(A), (B), *deleted by* P.L. 97-34 for estates of those dying after 12/31/81. Those dying after 1981 could deduct their entire estate if it passed to the spouse. 26 U.S.C. § 2056.

The deduction was first intended to equalize the treatment of estates of married decedents in community property and common law states. *Pennsylvania Nat'l Bank v. United States*, 387 U.S. 213, 219 (1967). Since the provision was intended to permit marital property to be taxed in two stages, not to allow a tax-exempt transfer to succeeding generations, the deduction is generally restricted to the transfer of property interests that will (unless disposed of or consumed) ultimately be included in the surviving spouse's estate. *U.S. v. Stapf*, 375 U.S. 118, 128 (1963). No deduction is allowed for most terminable interests which perish at the survivor's death and would not be included in her taxable estate. *See Estate of Smith*, 565 F.2d 455, 459 (7th Cir. 1977). Nor can an estate deduct property that passes to the survivor without

---

[3] "Adjusted gross estate" is the decedent's estate after certain other deductions are allowed. 26 U.S.C. § 2056(c)(2)(A), *deleted by* P.L. 97-34 for estates of decedents dying after 12/31/81.

having first been included in decedent's gross estate.  26 U.S.C. § 2056(a).

Interpreting the trust instrument here is complicated by the fact that the Beavers and their advisors may not have realized that the law changed in 1981 to allow an unlimited marital deduction.  26 U.S.C. § 2056.  Both parties argue as if only half of the estate could be passed via the deduction.  Plaintiff's Memorandum of Points and Authorities, at 6; Affidavit of W. Scott Barrett, at 3.  In fact, decedent could have passed his entire estate to the survivor and deducted it, *if it was first included in the gross estate* and met the other requirements for the marital deduction.  The parties do not say if the S.P.T. stock was included in Mr. Beaver's gross estate for federal estate tax purposes.  If it was not, then clearly it is not an "asset[] subject to the terms of this Trust . . . *eligible to satisfy the marital deduction*" and did not pass to the Survivor's Trust.  Art. V.A.(2) (emphasis added).

Inter vivos trusts like the original Beaver Family Trust are used to pass property at death without the time and cost of a probate proceeding.  Am. Jur. Legal Forms 2d *Federal Tax Guide to Legal Forms* ¶ 180-K-91 (1981);  17A Am. Jur. Legal Forms 2d *Trusts* §§ 251:93, 251:101 (1984).  The assets escape probate but may be subject to federal estate tax.  The difficult issue is determining what the settlors intended to achieve by creating the Survivor's and Decedent's Trusts.

The marital deduction allows a couple to arrange their affairs so that their combined wealth is divided between their estates (via the marital deduction) in a manner that achieves the lowest net total tax.  If the survivor will also be subject to estate tax at death, the couple often transfers just enough via the deduction to eliminate any tax liability (after utilizing the unified tax credit) of the first decedent's estate.  To transfer more only subjects the income initially taxed in the first decedent's estate to possible taxation again if it is still in the survivor's estate at her death.  But there are also non-tax reasons for restricting the amount transferred to the survivor:

> If the . . . deduction could be secured only by leaving the property to the surviving spouse outright and with no strings attached, its usefulness would in many cases be questionable.

> The cost of foregoing the marital deduction is calculable.  The potential damage from mismanagement

21

after an outright transfer is infinitely greater and its actual size unpredictable. A kind of *economic ownership* has been created which when given to the surviving spouse enables the decedent's estate to claim the benefit of the deduction while surrounding the administration and conservation of the property with certain safeguards, wherever such protection may be seemed desirable.

The essence of this economic ownership qualifying for the marital deduction is the combination of *income for life* and a *general power to appoint*, both vested in the surviving spouse.

34A Am. Jur. 2d *Federal Taxation* ¶ 44,661 (1989) (emphasis added).

The Survivor's Trust was structured to qualify as a "life estate power of appointment" trust. Arts. VI.A-C, VII.C; *see* 34A Am. Jur.2d, *supra* at ¶ 44,662 (conditions required to qualify as "power of appointment" trust). Distributions from decedent's estate to such a trust qualify for the marital deduction if they are first included in the gross estate. 26 U.S.C. § 2056(a). But the survivor's power to appoint must be quite broad to qualify for the marital deduction. A grantor might be willing to give the surviving spouse the full power of disposition needed for the deduction for some property but wish to limit the survivor to a life interest with a vested remainder to children in other property. The creation of two trusts was the safest way of doing this. *See* Am. Jur. Legal Forms 2d, *supra* at ¶ 180-P-51 (1981)[4]; *see also* 17A Am. Jur. Legal Forms 2d *Trusts* §§ 251:251-259 (1984). This seems to be exactly what the Beavers intended. The detail which the trust instrument outlines for the Decedent's Trust implies that the Beavers intended the assets in that trust to be protected from exhaustion or disposal by the survivor but still be available for his/her support as the trustees deemed necessary. Arts. VII.A-C; VIII.C.

### B. "Other Assets"

---

[4] Apparently the editors of Am. Jur. Legal Forms 2d thought that two trusts were no longer needed after the Tax Reform Act of 1981; these paragraphs are deleted in the 1981 revision shown in the 1985 cumulative supplement to the text.

But did the Beavers intend the S.P.T. stock to be transferred to the Decedent's Trust? If the S.P.T. stock was included in Mr. Beaver's gross estate for federal estate tax purposes, was it also included in the "*other* assets" from which property equal in value to the maximum marital deduction was to be transferred to the Survivor's Trust? Since no language in an instrument is treated as surplusage as long as any other course is reasonably possible, 90 C.J.S., *supra* at § 161(g)(2), we see only two possible meanings for "other." Either it refers to assets other than the original Trust Estate (the S.P.T. stock), or it refers to assets other than the Survivor's separate property. Looking at the document as a whole, the first interpretation makes more sense. Why would the settlors create two trusts, surround one with provisions that severely restrict the survivor's access to its assets, and then intend to transfer as little as possible to it? In fact, why use the language "maximum marital deduction" (implying benefit to the decedent's estate rather than to the survivor) when determining the amount to flow to the Survivor's Trust?

After examining the trust instrument as a whole, it appears the Beavers wanted both to minimize taxes and to surround the administration and conservation of the S.P.T. stock with safeguards possible only by transferring it to the Decedent's Trust. Any other assets transferred to the Beaver Family Trust without specific instructions for allocation were to be placed in the Decedent's Trust. Art. V.C. This reinforces the view that the settlors intended most property to remain in the Decedent's Trust. We hold that the S.P.T. stock was transferred to the Decedent's Trust.

## II. *Who are the Trustees of Decedent's Trust?*

Defendants argue that "the plain language of Article II [of the trust instrument] . . . contemplates that upon the death or resignation of either Original Trustee, that Defendants Cravens and Barrett would succeed both Original Trustees. . . ." Defendant's Memorandum of Points and Authorities, at 5-6. The language, however, is not as plain as defendant contends. In our view, it would have been a simple matter to specify that defendants shall "replace" both the Survivor as well as the Decedent as trustees. Instead, the instrument states that "[i]n the event of the . . . death of any original Trustee [Mr. and Mrs. Beaver] . . . the Trustors nominate and appoint to serve as Trustees . . . WILLIAM H. CRAVENS and W. SCOTT BARRETT." Art. II.B. It does not specify whether the successor trustees replace only the deceased original trustee as Mrs. Beaver contends (Plaintiff's Memorandum of Points and Authorities, at 7-8) or whether both original trustees are replaced.

23

The general rule, except as provided otherwise by statute or the trust instrument, is that on the death of a trustee and pending appointment, if any, of a new trustee, the trusteeship devolves on any surviving trustees. 90 C.J.S. *Trusts* § 236 (1955); 76 Am. Jur. 2d, *supra* at § 301 (surviving trustees can generally exercise trust powers). Defendant argues that construing the instrument to allow the surviving trustor to be both beneficiary and trustee would be unreasonable, since it would place her in a position of conflict. Defendant's Memorandum of Points and Authorities, at 5. But such trusts are allowed, except where a sole beneficiary is also the sole trustee, on the theory that the legal and equitable titles held as trustee and beneficiary are sufficiently different to prevent the legal estate from merging into the equitable one. Bogert, Law of Trusts § 30 (5th ed. 1973). Mrs. Beaver is neither the sole trustee nor the sole beneficiary; nothing in the instrument implies that the trustors intended to deprive the survivor of *all* input and guidance in managing the Decedent's Trust so that it will be well-managed and its assets conserved for their children. The courts are reluctant to remove trustees, especially those appointed by the settlor, Bogert, *supra* at § 160, and it thus seems unwarranted to remove a surviving trustee because of the *absence* of an express provision clarifying her status. We hold that Mrs. Beaver is a trustee of the Decedent's Trust.

III.    *Are the Directors and Officers Elected or Appointed at the February 1990 Shareholders' Meeting the Valid Governing Authority of South Pacific Traders, Inc.?*

In view of our conclusion that Mrs. Beaver is a co-trustee of the Decedent's Trust, we hold for the following reasons that the special shareholders meeting of February 21, 1990, called by defendants Cravens and Barrett, was invalid. The general rule is that trustees must jointly exercise all powers calling for their discretion and judgment, 76 Am. Jur.2d, *supra* at § 299, though the Uniform Trust Act ("UTA") permits a majority of a group of three or more trustees to exercise the powers of the trust, absent a provision in the instrument or a court order to the contrary. *Id.* at § 300. Since we have no pertinent statutes or cases we turn to the common law. *See Tung v. Ah Sam*, 4 A.S.R. 764, 767-68 (1971).

The Restatement (Second) of Trusts requires co-trustees to jointly exercise power. Bogert, *supra* at § 91 n.55. "In the absence of a statute or trust provision to the contrary, a majority of three or more trustees has no power to act or to compel the minority to join in action." *Id.* (quoting the Restatement). Thus any acts of co-trustees Cravens and Barrett requiring discretion and judgment (e.g., calling a shareholders

meeting) require Mrs. Beaver's agreement as co-trustee. 76 Am. Jur.2d, *supra* at § 299.

There is no provision in our statute dealing with shareholder meetings, *see* A.S.C.A. Title 30, but the bylaws of South Pacific Traders, Inc., provide that special meetings of shareholders for any purpose may be called by the president, board of directors, or shareholders holding at least 20% of the voting power of the corporation. S.P.T. Bylaws, Art. IV § 2. Apparently Mrs. Beaver was president at the time, Complaint and Answer, para. 17; the board consisted of plaintiff, Barrett, Fotu Soliai, Muliufi Hanneman, and Abraham Orcini, *see* Minutes of S.P.T. Shareholders' Meeting, February 21, 1990; Defendant's Memorandum of Points and Authorities, at 6-7; and the co-trustees held joint legal title (*see* Bogert, *supra* at § 32) to the majority of S.P.T. stock. *See* Complaint and Answer, paras. 6, 9; *see also* Henn, Law of Corporations §§ 187, 1026 (2d ed. 1970) (trustee is ordinarily owner of record with right to vote).[5]

Mrs. Beaver alleges that Cravens and Barrett called the meeting in their capacity as trustees/shareholders and that she received no notice of it.[6] Complaint, para. 16. Since defendants do not deny this, they are deemed to have admitted it. T.C.R.C.P. 8(d). They argue that plaintiff was not entitled to notice since she was no longer a trustee. Answer, para. 16. But since Mrs. Beaver was, as a matter of law, a co-trustee of Decedent's Trust, defendants were required to act jointly with her. *See* 76 Am. Jur.2d, *supra* at § 299 (trustees must jointly exercise all powers calling for discretion and judgment). Since they were not

---

[5] Defendants state that the share certificate for the S.P.T. stock is made out in the name "Beaver Family Trust," July 3, 1990, Letter of Barrett to Ala'ilima; Defendants' Memorandum of Points and Authorities, at 2-3, and that Mrs. Beaver is not registered in the corporate books as a shareholder. Answer, para. C. However, legal title to trust property is held in the name of the trustee(s), not the name of the fictitious trust. *Price v. Marathon*, 463 N.E.2d 410, 414 (Ohio App. 1983); *Cohen v. Friedland*, 450 So. 2d 905, 906 (Fla. App. 1984). The certificate should be made out in the name of all three trustees jointly, held as trustee for the Beaver Family Trust (Decedent's Trust).

[6] Apparently, only Cravens and Barrett attended the shareholders meeting. *See* Minutes of S.P.T. Shareholders' Meeting, February 21, 1990.

25

empowered to call a shareholders' meeting without their co-trustee, the meeting was unauthorized and its proceedings of no effect. 18A Am. Jur. 2d *Corporations* § 958 (1985). We hold that the expansion of the board to seven members and the election of new board members was ineffective.

Additionally, there is doubt whether the new enlarged board was properly elected:

1.    Did the shareholders have authority to remove the old board and elect a new enlarged board?

2.    Could the shareholders remove directors without cause before their terms expired?

*See* Henn, *supra* at § 192. The parties disagree on a vital issue of fact: whether plaintiff and Hanneman were notified of the special board meeting of February 21, 1990. *See* Complaint and Answer, paras. 16-18; Affidavit of Lefaga Beaver. At that meeting the new board (without plaintiff and Hanneman) elected Cravens to replace plaintiff as president and Abraham Orcini to replace Hanneman as secretary.

A special board meeting held without due notice to all the directors as required by the corporation's bylaws, and in the absence of those directors without notice, is unlawful, and all acts done at such a meeting are void, absent ratification or estoppel. *See* 18B Am. Jur. 2d *Corporations* at § 1453 (1985). The bylaws of South Pacific Traders, Inc. provide "due notice in writing [must be] given to each director in the manner prescribed by statute." S.P.T. Bylaws, Art. II, § 6. The Territory has no statute dealing with notice of directors meetings, *see* A.S.C.A. Title 30, but reasonable advance notice enumerating any extraordinary matters to be discussed is usually required for special meetings, absent a contrary provision. Henn, *supra* at § 209. If the corporation did not give plaintiff and Mr. Hanneman such notice, their removal as officers would be void.

IV.    *Does the Rule Against Perpetuities apply in Samoa to invalidate certain interests created by the Decedent's Trust, and does such partial invalidity so frustrate the intent of the trustors that the entire trust must be voided?*

Finally, plaintiff claims that the trust instrument must be invalidated because it creates future interests which violate the Rule Against Perpetuities. She maintains that invalidating these interests defeats the intention of the settlors (she and Mr. Beaver) to such an extent that the entire decedent's trust must fail. Plaintiff's Supplemental Memorandum.

Defendants, however, argue that the Rule should not apply in American Samoa, since it is based on a public policy favoring free alienation of property, which directly contradicts the Samoan public policy prohibiting free alienation (A.S.C.A. § 37.0204). Defendants' Supplemental Memorandum.

We look to the trust instrument and observe the following:

1. When the Survivor dies, the assets in the Decedent's Trust shall be divided into separate trusts for each living Beaver child and each group of living descendants of each deceased Beaver child. Art. IV.C.

2. The trust for their child Lotoa terminates when she reaches age thirty-five. Art. VII.C. Each other child's trust continues past the child's death (if the trust has not yet been completely distributed[7] and the child has living descendants) for the benefit of such descendants until the deceased child's youngest child (the grandchild of the settlors) reaches twenty-five.

3. When the deceased child's youngest child reaches twenty-five, the remaining assets in each deceased Beaver child's trust are divided into equal shares for each of the deceased child's living children (settlor's grandchildren) and each group of living descendants (settlors' great-grandchildren or beyond) of any deceased children of that deceased child.

4. The instrument is unclear as to whether a deceased child's older children (settlor's grandchildren) can begin withdrawing their share of the

---

[7] "When any such *living child of* such deceased child or *grantor* [Mr. and Mrs. Beaver] shall have obtained the age of Thirty Five (35) years, he shall have the right to withdraw the entire amounts of his trust." Art. VII.C.(1). This implies that any Beaver child surviving to age thirty-five may terminate her trust.

deceased child's trust at age twenty-five[8] or whether they must wait until the trust is divided when the youngest sibling reaches twenty-five.

5. If any person is under twenty-five when his portion is to be distributed to him under these terms, his portion vests in him, but the trustees may withhold possession of it and hold it in trust for him until he reaches twenty-five, subject to the provisions regarding the maximum duration of any trust established hereunder. Art. IV.C.(2).

6. If any provision is void, invalid, or unenforceable, the remaining ones shall nevertheless be valid and carried into effect. If any Trust herein established exceeds the longest permissible period, it shall persist in its period for the longest period permissible, then terminate. Art. X.D. The instrument does not specify who will receive the corpus of a trust terminated by this provision.

The Rule Against Perpetuities reflects a public policy favoring free alienability and transferability of property. 61 Am. Jur. 2d *Perpetuities* §§ 1, 7 (1981). The Rule aims against the possibility of interests in property vesting too remotely from the time they are created. W. Burby, Real Property § 183 (1965). Under the Rule, all future interests must vest or fail no later than twenty-one years after the measuring period of lives-in-being when the interest is created. 61 Am. Jur. 2d, *supra* at § 6. Whether it even applies in Samoa is a question of first impression,[9] but even if it does, we hold that the savings clause in Article X.D. saves the trust: (1) by terminating any trust that reaches the longest period permitted by the Rule, or (2) by severing any provisions that violate the Rule so that they cannot invalidate the entire trust instrument.

Savings clauses are upheld if carefully drafted. *See* 61 Am. Jur. 2d, *supra* at § 27 (citing cases where savings clauses were upheld or rejected); 70 C.J.S., *supra* at § 35 (provision creating an interest that

---

[8] Each Beaver grandchild can begin to withdraw the principal and accumulated income of his/her trust at age twenty-five, and by age thirty-five may withdraw the entire amount. Art. IV.C.(1). But the trust of a deceased child remains undivided until the youngest child of that deceased child reaches twenty-five. Unless the older grandchildren can withdraw their portion of an undivided interest, the provisions conflict.

[9] *See Tufele v. Mose*, 7 A.S.R.2d 157 (1988).

28

could be interpreted as violating Rule will not be construed to do so where instrument contains another provision limiting duration of such interests to those permitted by law); *Nelson v. Mercantile Trust Co.*, 335 S.W.2d 167, 172-73 (Mo. 1960); *Cennamo v. American Sec. & Trust Co.*, 350 F. Supp. 1354, 1358-59 (D.D.C. 1973); *First Ala. Bank of Montgomery v. Adams*, 383 So. 2d 1104, 1109 (Ala. 1980); 17A Am. Jur. Legal Forms 2d *Trusts* § 251:408 (1984); 15 Am. Jur. Legal Forms 2d *Perpetuities* §§ 201:13-14 (1973) (examples of savings clauses).

Only two cases were cited where a savings clause did not save the instrument by cutting short interests otherwise void under the Rule. In *Farmers Nat'l Bank v. McKenney*, 264 S.W.2d 881 (Ky. App. 1954), the provision creating the interests for "as long as the law allows" was so uncertain in its language that the creator's intent could not be discerned, so the entire provision was held unenforceable. In *Hagemann v. Nat'l Bank & Trust Co.*, 237 S.E.2d 388 (Va. 1977), the savings clause provided that the corpus of any interest terminated to avoid the Rule would be distributed to the persons to whom it would ultimately go under the other trust provisions, i.e., the very dispositions rendered void by the Rule. The court noted that "[a] 'savings clause' cannot save a void interest by adopting the very provisions which make it void." *Id.* at 393.

The Beaver trust instrument is ambiguous as to when the trusts created therein terminate, but the beneficiaries can begin to withdraw the corpus at age twenty-five and by the age of thirty-five withdraw the entire amount, terminating the trust. Art. VII.C.(1-2). Nor does the instrument state who receives the corpus if a trust terminates early to avoid a violation of the Rule. These shortcomings might render the savings clause ineffective, if the settlors' intent could not be discerned. *See Farmers Nat'l Bank v. McKenney, supra.* But even if the savings clause does not apply, the only interests that might vest too remotely are those of the great-grandchildren and possibly grandchildren, depending on whether a grandchild's interest vests when the survivor of Mrs. Beaver or her parent (a Beaver child) dies or when the grandchild reaches age twenty-five. The Rule applies only to contingent remainders and executory limitations, not present interest or vested remainders (except for interests vested in a class subject to open). 61 Am. Jur. 2d, *supra* at §§ 44-46. Where an interest is vested in a class subject to open, the number of persons who will take and the size of each person's share must also be determined within the measuring period of the Rule or the interests of *all* class members fail. *Id.* at §§ 33, 44. Whether a remainder interest in a trust is contingent, vested, or vested subject to

29

being later divested depends on the intent of the trustor, as determined from the provisions of the trust instrument. Since the law favors vested interests, remainders will not be construed as contingent when they can be taken as vested, particularly if the trustor's intent is in doubt. 90 C.J.S., *supra* at § 188.

The measuring period for Decedent's Trust began when Mr. Beaver died, not when the instrument was signed. *See Cook v. Horn*, 104 S.E.2d 461, 464 (Ga. 1958); 61 Am. Jur.2d, *supra* at § 72; *see also* W. Burby, *supra* at § 187 (if conveyor reserves power of revocation, period under Rule computed from time such power is released); Annotation, *Settlor's right to revoke or terminate trust, or to withdraw funds or invade corpus thereof, as affecting operation of rule against perpetuities*, 7 A.L.R.2d 1091 (1949).

Assuming all future interests were created when Mr. Beaver died[10], all of his and Mrs. Beaver's living children would be lives-in-being when the interests were created. The measuring lives for purposes of the Rule would be the surviving settlor (Mrs. Beaver) and the living Beaver children. *See* 61 Am. Jur. 2d, *supra* at §§ 18-19 (common law rule does not restrict number of lives in being which may be selected as measuring lives); *see also First Ala. Bank of Montgomery v. Adams*, *supra* at 1108 (measuring life for testator's bequest to grandchildren is "the survivor of the widow or the daughter"). The gifts to the Beaver children are not class gifts, since they are created (for purposes of the measuring period of the Rule) when Mr. Beaver died. *See* Burby, *supra* at § 162 (interest to children not a class gift where interest is created at grantor's death, since size of class is certain then). Since the interests of the Beaver children must vest or fail within their lifetimes, and both the size of the class of "children of Mr. and Mrs. Beaver" and each member's share can be ascertained at Mr. Beaver's death, they do not violate the Rule.

A Beaver grandchild may never receive an interest, since the trust of her parent (a Beaver child) may have terminated because it was completely distributed at the discretion of the trustees or the Beaver child withdrew the entire amount at age thirty-five. The remainder interests of the grandchildren on reaching ages twenty-five, thirty, and thirty-five

---

[10] The defendants argue that the trusts created for children and their descendants from the Decedent's Trust are effective at Mrs. Beaver's death.

30

could be considered as contingent (subject to the condition precedent of reaching the specified ages) or vested when the survivor of her parent (a Beaver child) or Mrs. Beaver dies, with only the enjoyment being postponed until the specified ages. In construing language in wills, a condition is deemed to be a condition subsequent which will divest a vested interest rather than a condition precedent to vesting, unless the language of the instrument forbids such a construction. *Joyner v.Duncan*, 264 S.E.2d 76, 85 (N.C. 1980). Since wills and trusts are similarly construed, the "age twenty-five" condition is not a condition precedent. The size of the class and the portion each would receive can be ascertained when the survivor dies, a date within the period of the Rule.

Though the grandchildren may not enjoy the corpus of the trust until they are twenty-five or older, their interests vest at the death of the survivor of Mrs. Beaver or their parent (the Beaver child) if the age restriction on reaching the corpus only defers enjoyment, not vesting. *See Joyner v. Duncan*, *supra* at 84-85 (class gift to grandchildren on reaching specified ages of 25, 30, 35, and 40 years does not violate Rule, since provision of testamentary trust construed as giving grandchildren a vested interest at birth subject to open, and class would close when testator's surviving son, a life in being, died); *Carter v. Berry*, 140 So. 2d 843 (Miss. 1962) (provision in will providing that active trust should terminate when youngest grandchild becomes twenty-five provided for vesting when te. ᵗator died and the class' closing within lives-in-being, at death of testator's surviving daughter); Annotation, *Distinction as regards rule against perpetuities between time of vesting of future estates and time fixed for enjoyment of possession*, 110 A.L.R. 1450; 70 C.J.S. *Perpetuities* §§ 7, 16(b) (postponement of actual enjoyment or possession beyond allowable perpetuities period does not void interest if it vests within that period).

The gifts to the descendants of the grandchildren probably violate the classic Rule, 61 Am. Jur. 2d, *supra* at § 35, since some descendants could be born more than twenty-one years after the death of the survivor of Mrs. Beaver or the Beaver children (the measuring lives) and would not take within the period permitted by the Rule. But even these may be valid under some modern alterations to the Rule, such as the doctrines of "wait-and-see," *id.* at § 29; separability, *id.* at §§ 35, 89; Annotation, *Separability, for purposes of rule against perpetuities, of gift to several persons by one description*, 56 A.L.R. 450; cy-pres, 61 Am. Jur. 2d, *supra* at § 31; and equitable approximation. *Id.* at § 32.

31

Even if the interests to the descendants violate the Rule and are thus invalid, they are probably not so crucial that they drag the entire trust down. The entire Trust would not fail unless the provisions are so inseparable that eliminating them would violate the settlors' main scheme in settling the trust. *Id.* at §§ 85-89, 95-99; 89 C.J.S., *supra* at § 79; Bogert, *supra* at § 50 (invalid contingent interests following trust estates may drag down trust if they violate the Rule, but void and valid interests sometimes are separated and the valid ones enforced); 70 C.J.S. *Perpetuities* § 21 (1951) (whether invalidity extends to other provisions of instrument depends on whether provisions are so interwoven that some cannot be separated from others without defeating primary intention of maker of instrument and his general plan for disposing of property).

The grantor's intent governs whether the provisions are severable; the general rule favors severability. *Armington v. Meyer*, 236 A.2d 450, 455 (R.I. 1967). Since the instrument states that if any of its provisions are void, invalid or unenforceable, the rest shall nevertheless be valid, Art. X.D., this clear statement of the settlors' intent should prevail, and the invalidity of these remote interests to descendants should not drag down the entire Decedent's Trust.

We accordingly hold, and it is so ordered.